UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JESSICA ASHLEY WILLIAMS,

            Plaintiff,

  - against -

COUNTY EXECUTIVE EDWARD P.
MANGANO, POLICE COMMISSIONER
JANE DOE, DETECTIVES: WILLIAM
BOURGUIGNON, LEONARD MATHEWSON,
HECTOR BOURREN, JASON WRIESKE,
JASON COLLINS, DAMIAN SUAREZ,
STEPHEN FIRESTONE, SILIVA MARQUEZ, and
JAMES MARINUCCI,

            Defendants.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
17-CV-2667 (RRM) (AKT)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Plaintiff Jessica Ashley Williams, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated her constitutional rights when they arrested her on May 1, 2014, and charged her with various drug-related offenses. Defendants now move for summary judgment under Fed. R. Civ. P. 56. For the reasons stated below, Defendants' motion is granted in part and denied in part.

**BACKGROUND**

      On May 1, 2014, Williams was riding in a car on the Long Island Expressway, in the company of her boyfriend, Gerald Mobley, and his twin brother Gerod Mobley. (Defs.' Rule 56.1 Statement ("Defs.' SOF") (Doc. No. 54) ¶¶ 5–11.) The car was stopped by a team of Nassau County police officers, who alleged they saw drugs in plain view in the car. (*Id*. ¶¶ 11– 12.) The officers arrested Williams and the Mobleys and brought them back to their

stationhouse. (*Id*. ¶¶ 15–16.) Williams was incarcerated for a month thereafter before the grand jury voted no true bill, which resulted in her release. (*Id*. ¶¶ 20–24.)

The Complaint

Williams commenced this action on April 26, 2017, by filing a form § 1983 complaint. (Compl. (Doc. No. 1).) She appended to this form a "statement of facts" which alleges that she was "misidentified by N.C.P.D. as a target in a[n] ongoing criminal investigation which resulted in the plaintiff being falsely accused of possessing a criminal control substance narcotics [sic]" and states that she "has been subjected to being falsely arrested, held unlawfully imprisoned, and pursued maliciously in a feign prosecution." (*Id*. at 6–7.)[1] Williams also asserts that her "detention is predicated on the basis of an unconstitutional illegal search & seizure arrest." (*Id*. at 7.) Williams further alleges that Officer William Bourguignon called her obscenities, made sexual advances toward her, and physically assaulted her when he "caress[ed]," "grop[ed]," and "inspect[ed]" her body during a search "without the pretense of a female officer there." (*Id*. at 6.)

Although Williams did not specifically allege any causes of action, the Court construes these allegations as advancing four claims. First, the Court construes the claims that she has been "misidentified as a target" and "falsely arrested" as stating a § 1983 claim for false arrest against all Defendants. Second, the Court construes Williams's allegations that she has been "held unlawfully imprisoned" as stating a § 1983 claim for false imprisonment against all Defendants. Third, the Court construes her statement that she has been "pursued maliciously in a feign prosecution" as alleging a § 1983 malicious prosecution claim against all Defendants. Fourth, the Court construes Williams's allegations that Bourguignon made sexual advances

---

[1] All page numbers refer to ECF pagination.

towards her and that she was assaulted, caressed, and groped during a search he conducted as alleging a claim of unlawful search under § 1983 against Bourguignon.

On October 11, 2017, Judge Bianco *sua sponte* terminated defendants James Marinucci, Silvia Marquez, Police Commissioner Jane Doe, Stephen Firestone and County Executive Edward P. Mangano *sua sponte* for failure to plausibly allege personal involvement. (*See* Order granting leave to proceed in forma pauperis (Doc. No. 5).) In that order, Judge Bianco granted Williams leave to amend her complaint to add allegations of personal involvement against those defendants, but she did not do so.

The Instant Action

The remaining Defendants now move for summary judgment. This motion is unopposed. To support their motion, Defendants submit a statement of facts and accompanying evidence, as described below:

In the mid-afternoon of May 1, 2014, members of CIRRT, a Nassau County Police Department anti-crime Task Force unit, were in the vicinity of Hempstead Turnpike and Hendrickson Avenue in Elmont, New York. (Defs.' SOF ¶ 1.) This area is known for high drug activity. (*Id*. ¶ 2.) A CIRRT officer observed what appeared to be a drug transaction between two individuals. (*Id*. ¶ 3.) When the officer attempted to make an arrest, the purported purchaser ran away and was not apprehended. (*Id*. ¶ 4.) The purported seller, who was later identified as Gerod Mobley, was seen entering the back seat, on the passenger side, of a 1995 Jeep Grand Cherokee. (*Id*. ¶¶ 5–6.) Williams was seated in the front passenger seat of the SUV. (*Id*. ¶ 7.) The driver of the SUV was Gerald Mobley, Gerod's twin brother and Williams's boyfriend. (*Id*. ¶¶ 9–10.)

Officers followed the SUV, keeping it in constant view, and eventually pulled over the car on the Long Island Expressway. (*Id*. ¶ 11.) According to the arrest report, upon approaching the car Officers JasonWrieske and Leonard Mathewson observed small bags of a tan powdered substance believed to be heroin on the floor of the vehicle, and Bourguignon observed "a black pouch open and in plain view in the center console of the vehicle. The pouch contained twenty-two (22) individual wrapped pieces of [a] rock-like substance believed to be crack cocaine." (Exhibit C to Def.'s Motion for Summ. J., Arrest Report ("Exhibit C") (Doc. No. 55-3) at 3.) A large quantity of drugs was recovered from the vehicle. (Defs.' SOF ¶ 13.) The largest quantity of drugs was located in the open bag in the center console of the SUV. (*Id* ¶ 14.) Because no one claimed ownership of the drugs, all three of the occupants of the vehicle were arrested. (*Id*. ¶ 15.)

Bourguignon was the officer who spoke with Williams at the scene of the vehicle stop. (*Id*. ¶ 21.) In her deposition testimony, Williams said that Bourguignon and Mathewson called her names and yelled at her during the vehicle stop. (Exhibit H, Excerpt from Williams Deposition ("Exhibit H") (Doc. No. 55-8) at 1–3.) She further testified that she did not remember any of the other officers named in her complaint or what they had done aside from "watching everything that's happening" and "they could have observed… [n]obody did anything to help or stop or interject or anything like that." (*Id*. at 5, 7.) She affirmed that she listed Officers Hector Bourren, Jason Wrieske, Jason Collins, and Damian Suarez in her complaint because she "got their name[s] off the arrest paperwork" and that she believed "some of them" had witnessed her arrest – "whoever was there." (*Id*. at 6.)

At the station house, at least one of the Mobley brothers asked Williams to state that the drugs belonged to her. (Defs.' SOF ¶ 16.) Two weeks after the arrests, Gerod Mobley signed a

4

statement addressed to the Court and to the Nassau County District Attorney's Office in which he admitted that the drugs belonged to him and that Williams did not possess any of the drugs. (*Id*. ¶¶ 17–18.)  By the time the statement was made, the case had been turned over to the District Attorney's Office.  (*Id*. ¶ 19.)  In August 2014, Williams's case was presented to a Grand Jury, which declined to issue an indictment against her.  (*Id*. ¶ 24.)

In their Memorandum of Law, Defendants argue that Bourren, Wrieske, Collins, and Suarez are entitled to summary judgment because Williams has failed to allege personal involvement.  (Mem. (Doc. No. 55) at 13–14.)  Defendants assert that Mathewson is also entitled to summary judgment because Williams's allegations against him do not form the basis of a cognizable claim under § 1983.  (*Id*. at 14.)  Further, Defendants state that Williams's arrest was supported by probable cause, and so Defendants are entitled to summary judgment for her claims of false arrest, malicious prosecution, and unlawful search.  (*Id*. at 9–13.)

Though there is nothing in the record addressing whether a search of Williams's person occurred, an unfinished footnote in Defendants' Memorandum reads, "Defendants do no[t] concede that there was a search of Plaintiff at the scene of arrest. However, because the standards for a summary judgment require the facts to be viewed in the light most favorable to the non-movant,".  (*Id*. at n. 1.)  This footnote appears to disclaim the argument that the search did not occur for the purposes of the instant motion.  Rather, Defendants argue that, even if probable cause for the arrest and the search did not exist, Bourguignon is entitled to qualified immunity. (*Id*. at 15–16.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is

5

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it may impact the "outcome of the suit under the governing law." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed," and the Court must draw all "justifiable" or reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255 (citation omitted); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) ("[T]he court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions . . . in the light most favorable to the party opposing the motion." (citations omitted)).

"Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). "[T]he failure to respond to the motion does not alone discharge the burdens imposed on a moving party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Wilson v. Air Serv Corp.*, 705 F. App'x 43, 44 (2d Cir. 2017) (summary order) (quoting *Vermont Teddy Bear Co.*, 373 F.3d at 244). In addition, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Id*. (quoting *Vermont Teddy Bear Co.*, 373 F.3d at 242).

The same standards for summary judgment apply where, as here, the non-movant is proceeding *pro se*. *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015). However, "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).

## DISCUSSION

### I.     Personal Involvement

In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.* In addition, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "[P]ersonal involvement for these purposes ... mean[s] direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Kee v. Hasty*, No. 01-CV-2123 (KMW) (DF), 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004) (internal citations omitted).

Here, the undisputed record contains no evidence from which a reasonable factfinder could conclude that Bourren, Wrieske, Collins, or Suarez were personally involved in a

7

constitutional deprivation.  At her deposition, Williams testified that she did not remember what any of the officers looked like other than Mathewson and Bourguignon, she did not recall anything they had done, and she was not sure which of the officers she named in her complaint were present for or observing her arrest or allegedly unlawful search.  Accordingly, there is no evidence establishing personal involvement on the part of Bourren, Wrieske, Collins, or Suarez, and they are entitled to summary judgment.

Defendants also argue that Williams fails to allege that Mathewson was personally involved in a constitutional violation.  In her deposition testimony, Williams stated that she remembers Mathewson being present at the scene of her arrest and describes him as "yelling at me and calling me names too with Bourguignon." (Exhibit H at 2.)  "[A]lthough indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation under § 1983." *Rebenstorf v. City of New York*, No. 15-CIV-5784 (BMC), 2015 WL 6438765 at *4 (E.D.N.Y. Oct. 21, 2015) (quoting *Jermosen v. Coughlin*, 878 F.Supp. 444, 449 (N.D.N.Y.1995) (internal quotations omitted)).  Thus, Williams has not alleged that Mathewson was personally involved in a constitutional violation and so Mathewson is entitled to summary judgment.

## II.     False Arrest

A false arrest claim brought under § 1983 is substantially the same as a claim for false arrest brought under New York law.  *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1998).  Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intentionally confined the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.  *Id*. at 118.  In other words, a plaintiff must show that "the defendant

8

intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause is a complete defense to a false arrest claim under § 1983. *See Singer*, 63 F.3d at 118; *see also Weyant*, 101 F.3d at 852 ("[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest") (internal quotation and citation omitted).

Probable cause arises whenever an officer "has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *See Singer*, 63 F.3d at 118 (quotation omitted). Probable cause may exist "even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted). An officer who has probable cause to arrest need not "explore and eliminate every theoretically plausible claim of innocence" prior to making an arrest. *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)).

The undisputed record demonstrates that officers witnessed Gerod Mobley engage in what they believed was a drug deal and then get into the car with Williams and Gerald Mobley. The officers never lost sight of the vehicle and, when they pulled it over, several of them, including Bourguignon, were able to see what they believed to be heroin and crack cocaine in plain view. Under New York Penal Law § 220.25(1), "[t]he presence of a controlled substance in an automobile … is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found . . . ." *See also People v. Levya*, 38 N.Y.2d 160 (1975) (upholding the presumption); *Lopez ex rel Garcia v. Curry*, 583 F.2d 1188 (2d Cir. 1978) (same). The undisputed record demonstrates that the arresting officers

9

had probable cause to arrest Williams. Therefore, Bourguignon is entitled to summary judgment on the false arrest claim.

### III. Malicious Prosecution

Like false arrest claims, malicious prosecution claims brought under § 1983 are analyzed under state law. *See Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989). The elements of malicious prosecution under New York law are as follows: "(1) that the defendant commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). "Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause …." *Kinzer*, 316 F.3d at 144 (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)). Thus, "[a] malicious prosecution claim can rest on a prosecution that is continued notwithstanding the discovery of [exculpating information]" where a defendant had a duty to alert the prosecuting authorities of that exculpating evidence and maliciously failed to do so. *Id*. at 143–44.

As already discussed, Bourguignon had probable cause to arrest Williams during the vehicle stop. Yet, two weeks after Williams's arrest, Gerod Mobley mailed a letter to the Court and to the Nassau County District Attorney's Office stating that the drugs were his and that Williams had never possessed the drugs. Even if this letter provided exculpatory evidence that vitiated the probable cause upon which Williams's arrest was based, it is not sufficient to sustain a malicious prosecution claim where Bourguignon was never in possession of the letter and did not withhold it from the prosecution. Accordingly, Bourguignon is entitled to summary judgment on the claim of malicious prosecution.

10

### IV. Unlawful Search

Defendants erroneously cite to case law regarding a prisoner's expectation of privacy to explain why Williams's claim of unlawful search must fail. Though Defendants are correct that "where an officer lacks probable cause to make an arrest, 'any search incident to that arrest is illegal,'" *see* Mem. at 9 (quoting *Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740, 753 (S.D.N.Y. 2005)), it does not follow that any search conducted incident to a lawful arrest is by definition lawful. "Excessive and deliberate contact with sexualized parts of a subject's body during a frisk–in other words, groping–violates the Fourth Amendment." *Bobbit v. Marzan*, 16 - CV-2042 (AT), 2020 WL 5633000, at *8 (S.D.N.Y. Sept. 21, 2020) (collecting cases).

Williams alleges that Bourguignon "groped" and "caressed" her during a search of her person, and also made sexual advances towards her. Defendants do not address this claim in their briefing aside from, in a footnote, apparently disclaiming the argument that the search did not occur for the purposes of the instant motion. Viewing the evidence in the light most favorable to Williams and drawing all inferences in her favor, the allegation that Bourguignon groped and caressed her in a sexual manner during a search could suggest that Bourguignon's search of Williams's person was violative of the Fourth Amendment. Because Defendants have disclaimed the argument that the search did not occur for the purpose of this action, and because the record is devoid of evidence to suggest that the search was conducted lawfully, Defendants are not entitled to summary judgment on this claim.

Defendants argue that Bourguignon is entitled to qualified immunity with respect to this claim, but this argument is preposterous. It is clearly established that "a search must be reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Casado*, 303 F.3d 440, 447 (2d Cir. 2002) (internal quotations and

citations omitted). "No reasonable officer could believe that fondling an arrestee's breasts was a reasonable part of a search incident to arrest." *Bobbit*, 2020 WL 5633000, at *9. Similarly, no reasonable officer could believe that caressing, groping, and making sexual advances toward an arrestee during a search, as is alleged here, was a reasonable part of a search incident to arrest. Accordingly, Bourguignon is not entitled to qualified immunity for this claim.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted with respect to all claims against Bourren, Wrieske, Collins, Suarez, and Mathewson; and granted with respect to the false arrest and malicious prosecution claims against Bourguignon. Defendants' motion for summary judgment is denied with respect to the unlawful search claim against Bourguignon. This action is recommitted to Magistrate Judge Tomlinson for all remaining pre-trial matters, including settlement discussions if appropriate. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to the *pro se* plaintiff and to note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York
      January 11, 2021

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge